Good morning. May it please the Court, I'm Christopher Stender. I'm here on behalf of the petitioner, Satwant Kaur. I'd like to reserve two minutes of my time for rebuttal. To summarize our arguments, we believe this Court should find that the hearing held by the immigration judge was fundamentally unfair. And it was unfair basically for three reasons. First of all, the immigration judge refused to admit the polygraph examination and gave it no consideration whatsoever, dismissed it out of hand, and refused to evaluate it under any standard whatsoever. Now, is that reviewed by us for abuse of discretion? I think that would be a proper standard of review on that issue. Secondly, the immigration judge admitted the testimony of a convicted felon, Mr. Bossie. She made no credibility finding as regards to his testimony whatsoever. She appeared to adopt it, but she never made any type of credibility finding whether he was a credible witness or not. The third reason is the proper witness on behalf of the government was actually Kashmir Mali, who was the person that dealt with the Respondent, all the Respondents in general. There are four. There's a husband, wife, and two children. But Mr. Bossie really had almost no contact whatsoever with the Respondent and only had very peripheral contact with the Respondent's husband. Counsel, doesn't our SADEEN v. INS case respond to that issue, though? The government, as I understand it, Mr. Mali had already returned to India. The government only has an obligation to make reasonable efforts to produce him. You've gone to India. They have no control over him anymore. Doesn't that satisfy the requirements of the SADEEN case? Well, I think that for two reasons. First of all, the Respondent's counsel specifically requested and made a motion that the government produce Mr. Mali. The judge reserved ruling on that and never discussed it again. It's in the record. The motion was made. The judge ignores it. She reserves ruling. Secondly, the government has made no showing whatsoever. They must make some showing. They didn't say, well, perhaps we can put him on telephonically. Perhaps we can get an affidavit from him. Did you make a showing as to what he would testify? Well, again, this was the government's witness. I understand that. And they needed to do something. Well, the government didn't produce Mr. Mali. Correct. No. Okay. And so what I'm asking, you're saying the government didn't bear its burden. He was in India. They had no control over him. And I'm asking whether the petitioner made any kind of a proffer as to what he would say. We don't even know he has anything to say about this. We have your word for it. Not you personally, but your client's word. Basically, I'm puzzled as to why this should be a problem. Mr. Bossi and Mr. Mali have perpetrated one of the greatest frauds on the immigration system I've ever seen in my time on the court. There are scores of these cases. And it doesn't really sit too well to have one of the people that benefited from the fraud criticizing the government that one of these people got away and got back to India, does it? Well, I think the problem is, and it kind of segues into another argument, where the government refused to release the entire contents of the file. The FOIA was produced, but substantial documents in that FOIA were withheld. You asked, well, what proffer should have been made. Well, it's difficult for the petitioner's counsel to make a proffer and to present a proper defense when all the material hasn't been presented to the petitioner so that counsel can prepare and perhaps make that proffer. Secondly, I believe the burden properly is on the government. It's the government's witness. They chose to produce Mr. Mali. They, excuse me, to Mr. Bossi. They didn't produce Mr. Mali, and they made no showing whatsoever why they couldn't produce Mr. Mali. Now, we're making an assumption that it's impossible for him to have been produced under any circumstances. The government makes no attempt whatsoever, never even discusses it. And again, petitioner's counsel specifically requested that Mr. Kashmir Mali be produced. Government counsel never speaks to it. The judge reserves ruling, and it's never addressed. Well, obviously, you've got a de facto ruling, because there's no order that he shows. Well, correct. We have a ruling by default, I suppose, because the judge never says anything about it. Correct. What if we simply look at the affirmative evidence put forward by your client? The IJ found a fair number of inconsistencies in that evidence, quite independent of what Mr. Bossi said or anything else. Well, that would go back. I think looking at her testimony, what would be important would be to consider the polygraph examination also, where she was put under an independent examination and passed it. She came to court. She explained why she submitted the first application, albeit fraudulently. She withdrew that application afterwards with counsel. She submitted herself to a polygraph. She presented that evidence, and the judge refused to give it any weight whatsoever. If you look at the entire evidence that the petitioner testified to, including the polygraph, it is a consistent asylum claim. The immigration judge herself says that if it is credible, she has – does have a well-founded fear of persecution if she's returned to India. But that's typical of any well-constructed story. But you said if it's credible. My question is, is it credible? And the IJ says, I don't think it's credible. Well, going – again, we did point out in our brief why we think the immigration judge's considerations. She really pins it all based on a date of departure of the husband and there was some inconsistency and back and forth. But she never really gets to the heart of the claim regarding the persecution that she faced. And the persecution that the wife, the petitioner in this case, faced dealt with after the husband had departed to the United States and the Indian authorities came looking for him and arrested her and persecuted her. Putting to one side Mr. Bossie. So let's assume that we have no testimony from Mr. Bossie, no testimony from Mr. Marley. We simply have her testimony. Okay, here is my initial story that I told you. That's not true. Here is the story that's the true story. I assume the IJ is entitled to look at that and say, you know, that counts against you, that the first story you told isn't true. I absolutely – the immigration judge can do that. But what the immigration judge has to do is consider all the evidence presented, which she refused to do. Again, the polygraph evidence was – This one is new to me in the sense of I don't have a sort of practical experience. This is the first case I've had in ten years where polygraph evidence was sought to be introduced, whether admitted or otherwise. Do you have any sense as to how often polygraph evidence is sought to be introduced in asylum cases? I've never seen it before. Our office does do it frequently. As the immigration judge said here, the entire case turns on the credibility of the obviously we submitted the polygraph evidence in an attempt to bolster her credibility in that, as the immigration judge said, the entire case revolves around the credibility. Do you have any cases, counsel, that indicates that, excuse me, IJs are required to credit the results of polygraph tests? There are no cases specifically on point that an immigration judge – They're just like they are in civil courts, aren't they? I mean, it is – some people believe in them, some people don't believe in them. There's plenty of case laws. They're not in the civil courts, meaning in the Article III courts, where trial judges disallow them. They don't allow men because they think they're so unreliable. They pass Daubert, I suppose. But the reality is it's – you know, we're not saying you can't use them, but I don't think there's any authority, is there, that says that you have a right to require the IJ to admit a polygraph test, do you? No, we don't. And if the immigration judge had considered it and gave reasons why she would exclude that evidence or give it little weight, that may be – may have been justifiable. But the immigration judge here doesn't do that. She dismissed it out of – What did she do from your perspective? I'm sorry. What did she do regarding this order from your perspective? She dismissed it out of hand. She refused to give it any weight whatsoever, not – and she refused to say why she wouldn't give it any weight. That's the error. You think she's required to do that? I think she's required to either – to make a decision whether to accept it or not. She made a decision. She didn't admit it. And she reasons why. Is she required under the immigration law and procedural rules to state her reason for not admitting the polygraph test? Absolutely. And what's the case law? Well, any evidence that the Petitioner would have – would seek to produce in the hearing in front of the immigration judge, the immigration judge would have to give reasons. I mean, it's statutory. I'm asking specifically, counsel, about polygraph tests. Do you have any case law where an I.J. has declined to permit polygraph evidence to be introduced, said nothing about the reasons for it, and been reprimanded by the court of appeals for failing to do so? There are no cases on point that I know of, Your Honor. So this is your view of what it should be? Yes. And it's our – my view is evidence in general that the immigration judge has to give reasons for either accepting it or not. There's evidence and there's evidence. You know, there's some things that are obviously required to come in. There are other things that are not. I mean, somebody could show up and say, I have this stone, and if you'll just look in there, Your Honor, you'll see the truth of all things. I don't know that the immigration judge would be required to admit that. Would she? Are he in this case? No, but I think she would have to give reasons. Again, there was expert – The reason might be as to the sort of the truth-telling stone. Nonsense denied. And I'm not sure she even needs to say nonsense. As we said in her brief, there are handwriting analysis and fingerprint identification also which are subject to debate as to their reliability, but yet they are accepted in the courts. Okay. You're over time. Let's hear from the government, and we'll give you a minute to respond. Thank you. Sure. Good morning, Your Honors. May it please the Court. Jonathan Robbins here on behalf of Eric Holder, the Respondent. As Your Honors have noted, this is one of many cases with Booth Abbasi. And Your Honors – Maybe you know the answer. Maybe you don't. If you don't, don't worry about it. Do you know offhand how many cases are in front of the Court of Appeals now involving Mr. Abbasi and Mr. Malley? We've got four today. Other than the four today, I don't know of other ones. I didn't – Okay. But as far as this particular case is concerned, I'm certainly – there's no dispute that the original claim that was made was fraudulent. They withdrew it. And they testified to that. And then while the hearing was adjourned, the petitioners in the case were actually arrested as part of this. Booth Abbasi and his partner were arrested as well. And then they withdrew this claim and now submitted this new amended asylum claim. There's a number of issues in this case with regard to exhaustion. Certainly a lot of the claims that they're raising right now, particularly with respect to the immigration judge's bias, were not exhausted at the lower level and therefore aren't properly before the Court. I know in our brief we argue that there's a number of things that weren't exhausted. The Board did sua sponte address some of those issues, for example, the adverse credibility determination and the like. And certainly this Court has in the past determined that when the Board sua sponte, it reopens certain issues that it will address them. But certainly with respect to the immigration judge's bias, that was not exhausted. That's not properly before the Court. The same with respect to the claim regarding the Convention Against Torture. With respect to this claim that they're making that the government should have produced Mr. Mali, well, they did produce Mr. Abbasi. They didn't themselves subpoena Mr. Mali or anything. And as Your Honor has noted, he's not in the country. Now, is he out of the country because he was, I'll use the old word, deported? Yes. So it's not as though he escaped. You sent him out of the country. I believe that's what happened, yes. But, again, that whole line of argument is really not really – it's kind of disingenuous considering the fact that they've admitted that what Mr. Abbasi testified to is true, that they made a false application for him and they withdrew it. So, I mean, that's not really – So in some ways I wonder even why you needed Mr. Abbasi. I mean, once they admit that, it kind of adds a little color to your case, as it were. I mean, you dirty them up some more. But, I mean, they already said, listen, the first one was false, and now I'm telling you the truth. You can believe me now. Well, again, and with respect to that, you know, they couldn't really get their second story straight either. If you read the record and the line of questioning in that regard, I mean, they couldn't get their dates straight. Sometimes I think these cases are IQ tests rather than truthful tests. I mean, if they can't remember the story, they don't get to come in. Well, they certainly had trouble with his new amended asylum application. And the claim that my colleague – that it doesn't really go to the heart of the claim just really doesn't really hold up. I mean, the whole claim is based on Mrs. Cower's husband's alleged arrests. And then when they start testifying about the arrests, I mean, first there's one on the date of the birth of their son. One of them says it's two or three days later. Then they say, well, your asylum application says it was four months later. And he says, oh, yeah, that was the first arrest. And it just goes on and on. Mr. Rahm, this is somewhat tangential, but I want to be sure I understand this correctly. They've placed a great deal of faith in Molly's not being there. I understand what happens in an Article III court if you have a major recipient witness who doesn't show up. And in this case, the government took him out of the country. He's not available. There may be some culpability, some ability to exclude testimony or whatever. In an immigration court context, what penalty, if any, could be imposed on the government for having removed Mr. Molly and not having him available as a witness in the event they had subpoenaed him? Well, that would be a determination, I assume, for the immigration judge to make. I mean, what authority does the immigration judge have? Is it somewhat comparable to an Article III judge? I mean, I would assume so. I don't really know the answer to that. I mean, the immigration judge would have to make a determination whether the government made that reasonable attempt to offer the witness other than that or to procure the witness. I don't know. There's a fair amount of case law about, usually it's not witnesses like this that are so dramatic, but there's a fair amount of case law in cases where there are people apprehended at the border. A lot of the witnesses get sent back by the government, and then the question is, are they material? Why were they sent back? And so on. I mean, we've got a lot of stuff by analogy. With respect to the polygraph evidence, I mean, I think Your Honors have sort of struck the note on this, the polygraph evidence. Let's just say there's a lot of dispute as to the reliability of polygraphs in general, but certainly in asylum cases, polygraphs are particularly not useful because what you're looking at, all polygraph shows is subjective fear or potential fear of persecution, whereas you need to really look at the objective fear in asylum cases anyway. But with respect to the immigration judge's discretion to deny the polygraph evidence, he did actually give reasons for denying this. He said there's no independent indicia of its reliability. The only thing that they submitted with the polygraph test was the examiner's methods and explaining what he was doing, but there was no independent evidence to show how it could be reliable or anything along those lines. You know, this is not specific to this case. It's specific to all four of the cases that we've got. Do you have any notion as to how the government finally figured out what was going on with Mr. Bossi and Mr. Malley? I don't know the underlying specifics of the criminal case. Other than that, we know that this is all part of Mr. Bossi's plea agreement and that he's been providing this information. The FOIA request, again, they had an avenue to appeal the withholding of certain pages from the FOIA request, both in district court and to the actual DHS office, which they didn't make, so that's not properly before the court. Unless there's any specific questions with respect to this particular case regarding Mr. Bossi's fraud, I'll leave it to the court to make a decision, and we respectfully request that you uphold the board's decision. Thank you. Thank you. Mr. Tender, would you like one minute? Judge Smith asked a question regarding what is the standard, and there are two cases, the Sedain v. INS, where this court found a due process violation where the government, quote, did not make a good-faith effort to afford the alien a reasonable opportunity to confront and to cross-examine the witness against him. And more recently – That's the one I cited to you, Sedain. I'm sorry, yes. And that indicates that they are only required to, in quotes, make a reasonable effort in INS proceedings to afford the alien a reasonable opportunity to confront the witness against her. Right. Do you dispute that? No. And the border case I think Judge Fletcher might be referring to is Hernandez-Guadarrama v. Ashcroft, where the court reiterated that the burden of producing a hearsay declarant was on the government and not the alien. I think this is factually somewhat similar here, where there's a deportation order entered, and they seek to use that testimony against the petitioner, and there's no opportunity to cross-examine. How much more unavailable can one get than lost in India? Well, again, I think the government has so-called dirty hands here, where they send a person out and then really seek to use that evidence against the petitioner here in a removal hearing. They didn't use any evidence from Mollie, did they? Well, the answer is yes, because Basi's testimony is all based on what Mollie did. But that's Mollie's testimony, not Mollie's. I mean, Basi's testimony, not Mollie's, right? Right. Basi's really making hearsay statements, what Mollie told Basi. Thank you. Thank you. The case, Cowher v. Holder, now submitted for decision.
judges: Todd, Fletcher W. , Smith M.